**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA CHIVERS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL TESTING SERVICE,<br><br>Defendant. | Civil Action No. ___________________<br><br>Civil Action<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Patricia Chivers ("Plaintiff"), whose address is 3336 Castleton Street, Grove City, Ohio 43123, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Educational Testing Service ("ETS" or "Defendant"), whose principal place of business is 660 Rosedale Road, Princeton, New Jersey 08541. Plaintiff alleges the following based on personal knowledge as to her own acts and experiences and, as to all other matters, on information and belief, including the investigation of counsel:

## NATURE OF THE ACTION

1. This action arises from Defendant's failure to safeguard the sensitive personal information entrusted to it by its current and former employees, including Plaintiff, and the resulting unauthorized access to and acquisition of that information in a data security incident publicly reported on or about September 25, 2026 (the "Data Breach").

2. ETS is an educational assessment and research organization that develops and administers academic, language, professional, and workforce testing programs. Its operations depend on the work of employees who provide Defendant with sensitive information to establish and maintain their employment relationships.

3. The information Defendant collected from Plaintiff included her name, address, email address, telephone number, date of birth, Social Security number, driver's license information, and banking information. This information, together with the corresponding sensitive information of other affected employees, is referred to herein as "Private Information."

4. On September 25, 2026, public reporting identified ETS as a target listed by the Everest ransomware group, which claimed to have stolen ETS's internal data. September 25, 2026 is the date of the public reporting of the incident.[1]

5. On information and belief, unauthorized actors accessed Defendant's systems and acquired employee records containing Plaintiff's and Class Members' Private Information in the Data Breach. Defendant's collection and retention of sensitive employment records, the reported theft of its internal data, and the circumstances described below support these allegations.

6. Plaintiff worked for ETS as an online score reader from 2016 through January 2026. She entrusted her Private Information to Defendant in connection with that employment, with the understanding that Defendant would use reasonable measures to protect it from unauthorized access and disclosure.

7. Defendant controlled the systems, practices, and safeguards used to maintain that information. Plaintiff and the other affected employees could not select Defendant's security controls, inspect its systems, or prevent unauthorized persons from obtaining the records in Defendant's custody.

8. On information and belief, Defendant failed to implement and maintain reasonable safeguards appropriate to the sensitivity of the employment information it collected and retained.

Those failures enabled the unauthorized access to and acquisition of Plaintiff's and Class Members' Private Information.

9. The Data Breach deprived Plaintiff and Class Members of the confidentiality and control of their Private Information and exposed them to a substantial, continuing risk of identity theft, fraud, and other misuse. Following the Data Breach, Plaintiff began receiving spam communications, principally telephone calls and also emails.

10. Plaintiff seeks relief for herself and the Class, including compensatory damages, restitution as appropriate, and an order requiring Defendant to reasonably protect retained Private Information and provide meaningful measures to address the consequences of the Data Breach.

## PARTIES

11. Plaintiff Patricia Chivers is a natural person residing at 3336 Castleton Street, Grove City, Ohio 43123, and is a citizen of Ohio.

12. Plaintiff is a former ETS employee who worked as an online score reader from 2016 through January 2026. In the course of that direct employment relationship, she provided the Private Information described above to Defendant.

13. Defendant Educational Testing Service is a nonprofit corporation organized under the laws of New York with its principal place of business at 660 Rosedale Road, Princeton, New Jersey 08541, in Mercer County. ETS identifies that location as its headquarters. Defendant is a citizen of New York and New Jersey.[2]

14. Defendant conducts substantial operations in New Jersey and provides educational assessment and related services throughout the United States. At all relevant times, it collected,

---

[2] Educational Testing Service, Our Locations, https://www.ets.org/about/locations.html (last accessed Oct. 3, 2026).

used, and retained Private Information concerning its workforce, including former employees such as Plaintiff.

**JURISDICTION AND VENUE**

15. This Court has original subject-matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the proposed Class includes at least 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and minimal diversity exists.

16. Plaintiff is a citizen of Ohio. Defendant is a nonprofit corporation organized under the laws of New York with its principal place of business in New Jersey and is therefore a citizen of New York and New Jersey under 28 U.S.C. § 1332(c)(1). Plaintiff's citizenship is diverse from Defendant's citizenship, satisfying 28 U.S.C. § 1332(d)(2)(A).

17. On information and belief, the proposed Class includes hundreds or more current and former employees whose Private Information was accessed or acquired in the Data Breach. When the Class Members' claims are aggregated under 28 U.S.C. § 1332(d)(6), the damages and the value of the equitable relief sought exceed $5,000,000, exclusive of interest and costs, based on the scope of the compromised records, the injuries alleged, and the protective and remedial measures sought for the Class.

18. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business and headquarters in New Jersey and is at home in this State. On information and belief, Defendant directed and oversaw the information-security, human-resources, and records-retention practices challenged here from its New Jersey headquarters.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here. Defendant's headquarters and principal place of business are in

Mercer County. On information and belief, the challenged decisions concerning the protection and retention of employee information were made in this District.

20. An actual and justiciable controversy exists concerning Defendant's duties to safeguard Plaintiff's and Class Members' Private Information and the consequences of the Data Breach. Having jurisdiction under CAFA, this Court may grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and injunctive relief under Federal Rule of Civil Procedure 65.

## FACTUAL ALLEGATIONS

***Defendant Collected and Retained Plaintiff's and Class Members' Private Information***

21. Defendant required employees, including Plaintiff, to supply identifying, contact, and financial information in connection with their employment. That information enabled Defendant to administer its workforce, process compensation, maintain personnel records, and conduct its operations.

22. Plaintiff provided Defendant with her Social Security number, date of birth, driver's license information, contact information, and banking details during her employment relationship with ETS. She provided this information for legitimate employment purposes, not for disclosure to unauthorized persons.

23. On information and belief, Defendant collected comparable information from other members of its workforce and maintained employee records electronically in systems under its possession or control.

24. Defendant obtained a direct operational benefit from those records. The records connected employees to their identities, work, compensation, and other aspects of Defendant's personnel administration.

25. Once Plaintiff and Class Members supplied their information, Defendant determined how the records would be stored, who would have access, how long they would be retained, and what security protections would be applied.

26. ETS's published Privacy and Security Policy expressly addresses prospective, current, and former employees and contractors and describes the use of their personal information for human-resources purposes. Under its security provisions, ETS states: "ETS has established safeguards to help prevent unauthorized access to or misuse of your Personal Information."[3]

27. The policy describes physical, technical, organizational, and administrative protections and a records-retention program. It states that information is retained for the stated purposes and for additional periods required by law.

28. These statements demonstrate Defendant's recognition that the information entrusted to it requires safeguards against unauthorized access and misuse. Defendant's duties to reasonably protect that information also arose from its collection and control of sensitive employment records and the foreseeable consequences of their exposure.

29. Through the parties' employment relationship and course of conduct, Defendant requested and accepted Plaintiff's Private Information for restricted purposes and undertook to maintain it with reasonable security. Plaintiff supplied the information and performed work in reliance on that undertaking.

30. The understanding that Defendant would reasonably protect employment information did not end when an employee stopped working for ETS. So long as Defendant retained the information, it remained responsible for its reasonable protection.

---

[3] Educational Testing Service, Privacy and Security Policy, "Information for Job Applicants and ETS Staff" and "Security and Data Retention," https://www.ets.org/legal/privacy.html (last accessed Oct. 3, 2026).

***The Data Breach Exposed Sensitive Employee Information***

31. On or about September 25, 2026, the Everest ransomware group publicly identified ETS as a target and claimed to possess its internal data, as reflected in the reporting cited above.

32. On information and belief, the Data Breach involved the unauthorized access to and acquisition of records maintained in Defendant's systems, including employee records containing Plaintiff's and Class Members' Private Information.

33. The compromised employment records included, on information and belief, names and associated sensitive identifiers, contact information, and financial information of the kind Defendant collected from Plaintiff, including Social Security numbers, dates of birth, driver's license information, and banking information.

34. Defendant's personnel databases, access logs, incident-response records, and forensic evidence will identify the affected records and the manner in which the unauthorized access occurred. These records are under Defendant's control and are expected to provide further evidentiary support for the allegations made on information and belief.

35. On information and belief, Defendant's failure to reasonably restrict access, safeguard retained sensitive records, and detect and contain unauthorized activity enabled the compromise. Properly implemented protections appropriate to the nature of these records would have prevented or materially limited the unauthorized access and acquisition.

36. Plaintiff and Class Members did not authorize the persons responsible for the Data Breach to access, obtain, use, or disclose their Private Information. Their provision of information to an employer for legitimate purposes did not authorize its acquisition by cybercriminals.

37. On information and belief, the acquisition of sensitive employee records was deliberate. Those records provide information that can be used to impersonate individuals, access or open accounts, and direct fraudulent communications to the affected employees.

38. Once an unauthorized person obtains a copy of a sensitive record, the affected individual cannot compel that person to return every copy, refrain from further dissemination, or stop using the information.

39. The unauthorized acquisition therefore creates continuing consequences beyond the initial intrusion. Restoring Defendant's systems alone cannot restore the confidentiality of the information that was taken.

***Plaintiff's Experience and Injuries***

40. Plaintiff's relationship with ETS lasted approximately ten years. In connection with her work as an online score reader, she supplied the identifying and financial information Defendant requested and relied on Defendant to keep that information reasonably secure.

41. On information and belief, Defendant retained Plaintiff's employment records after her work ended in January 2026, and her Private Information was among the employee information accessed and acquired in the Data Breach.

42. Following the Data Breach, Plaintiff began receiving spam telephone calls and emails. These communications principally took the form of telephone calls.

43. The contact information Plaintiff entrusted to ETS included both her telephone number and email address. On information and belief, the disclosure of her information in the Data Breach contributed to the unwanted communications she subsequently received.

44. Plaintiff has suffered a loss of confidentiality and control over sensitive information she entrusted to Defendant for limited employment purposes. The unauthorized acquisition deprived her of the ability to determine who possesses and uses that information.

45. Plaintiff also faces a substantial and continuing risk of identity theft and financial fraud because the compromised employment records contain information capable of identifying her and linking her identity to financial accounts and other confidential records.

46. The Data Breach creates an ongoing need for reasonable protective measures, including review of financial and credit activity and appropriate identity-protection services. Plaintiff is considering credit monitoring in response to the risk of suspicious activity.

47. Defendant's failure to provide the reasonable protection contemplated by the parties deprived Plaintiff of the security component of their arrangement for the provision and retention of her employment information.

48. Plaintiff's claims concern both the consequences of the completed disclosure and Defendant's continuing custody of her information. On information and belief, Defendant continues to maintain copies of Plaintiff's Private Information in its personnel records, systems, or backups.

49. Plaintiff seeks compensation for the injuries caused by Defendant's conduct and effective prospective relief addressing the risk to her retained records and the need for protection against misuse of the information already compromised.

***Reasonable Data Security Was Necessary and Feasible***

50. The sensitivity of the information Defendant collected made reasonable security essential. Social Security numbers, birth dates, government identification information, and banking information expose employees to risks materially different from the disclosure of routine business information.

51. Defendant knew or should have known that records combining these identifiers would be valuable to persons seeking to commit fraud or identity theft. The foreseeable victims of deficient protection were the employees and former employees whose information Defendant maintained.

52. Defendant had superior knowledge of the location, volume, sensitivity, and accessibility of its employee records and the ability to implement safeguards across its systems. Individual employees lacked that knowledge and control.

53. Reasonable protection required a coordinated program addressing the collection, storage, permitted use, access, retention, and secure disposal of employee information, with safeguards proportionate to the sensitivity of the records and the foreseeable threats.

54. The Federal Trade Commission ("FTC") has long published guidance describing practical measures to protect personal information. Its publication Protecting Personal Information: A Guide for Business addresses records concerning employees as well as customers and explains the importance of inventorying sensitive data, limiting retention, securing retained information, disposing of unnecessary records, and preparing for security incidents.[4]

55. That guidance identifies protections such as restricting access to people with a legitimate need, using appropriate encryption, assessing system vulnerabilities, maintaining current software and protective tools, and supervising the security practices of service providers.

56. The FTC's Start with Security: A Guide for Business further addresses authentication, secure storage and transmission, network segmentation and monitoring, remote access, and procedures to address security vulnerabilities. These materials made practical protections widely available to organizations holding employee information well before the Data Breach.[5]

57. The FTC guidance supplies relevant benchmarks for reasonable care in handling sensitive information. Plaintiff relies on these published security principles as evidence of the

---

[4] Federal Trade Commission, Protecting Personal Information: A Guide for Business, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Oct. 3, 2026).

[5] Federal Trade Commission, Start with Security: A Guide for Business, https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last accessed Oct. 3, 2026).

precautions reasonably available to Defendant and of the foreseeability of the harm caused by inadequate protection.

58. The National Institute of Standards and Technology's Cybersecurity Framework likewise provides a widely available framework for managing cybersecurity risks through governance, identification of risks, protection, detection, response, and recovery. Its risk-management approach is relevant to an organization that maintains sensitive workforce information.[6]

59. The Center for Internet Security's Critical Security Controls identify practices addressing data protection, account and access management, vulnerability management, audit logs, network monitoring, employee security awareness, service providers, and incident response. These controls supply further examples of practical safeguards available before this incident.[7]

60. These resources support a reasonable security program tailored to the information actually held and the risks actually presented. Defendant had the ability to assess and implement suitable measures to protect the sensitive records it chose to collect and retain.

61. On information and belief, Defendant failed to maintain adequate controls over access to the systems and records implicated in the Data Breach, including reasonable authentication and restrictions on access to sensitive employee information.

62. On information and belief, Defendant also failed to adequately monitor access to and movement of employee data so that unauthorized activity could be promptly identified, investigated, and contained.

---

[6] National Institute of Standards and Technology, Cybersecurity Framework, https://www.nist.gov/cyberframework (last accessed Oct. 3, 2026).

[7] Center for Internet Security, The 18 CIS Critical Security Controls, https://www.cisecurity.org/controls/cis-controls-list (last accessed Oct. 3, 2026).

63. On information and belief, Defendant failed to adequately assess and remedy vulnerabilities affecting the protection of the implicated records and to apply reasonable safeguards to information retained after employment ended.

64. These failures permitted unauthorized persons to obtain confidential records that reasonable security measures would have protected. They exposed Plaintiff and Class Members to the very risks that data-security safeguards are intended to prevent.

65. Defendant's use of vendors or other agents to store or process employment information, if any, did not eliminate its obligation to exercise reasonable care in selecting, supervising, and controlling access by those persons.

66. Plaintiff and Class Members could not remedy these deficiencies themselves. Once they furnished information requested in connection with employment, its protection depended on the measures Defendant adopted and maintained.

***The Harm From Compromised Employment Records Persists***

67. The information compromised here can be used together to identify an individual and make fraudulent activity appear legitimate. An attacker possessing identifiers and contact details can direct communications that seem credible because they refer to genuine personal information.

68. The FTC warns that stolen personal information can be used to open accounts, make purchases, obtain services, and commit other forms of identity theft. Its identity-theft guidance also identifies steps affected individuals may need to take to protect their financial accounts and credit.[8]

---

[8] Federal Trade Commission, What To Know About Identity Theft, https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Oct. 3, 2026).

69. Information such as a date of birth cannot be changed. Replacing an account number or taking other protective steps also does not erase copies of the underlying records already obtained by unauthorized persons.

70. The resulting exposure therefore continues beyond the initial disclosure. Stolen identifiers can be retained, combined with other information, and used later, requiring protective measures responsive to the sensitivity of the information involved.

71. Plaintiff and Class Members have suffered the loss of confidentiality and control of their Private Information and the deprivation of the reasonable security that accompanied its entrustment to Defendant. Plaintiff has also experienced the unwanted communications described above.

72. The compromise creates a substantial risk of future misuse and a corresponding need for reasonable monitoring and identity-protection measures. The appropriate duration and scope of those measures should account for the continuing utility of the compromised identifiers.

73. Defendant's conduct caused these injuries by enabling unauthorized persons to obtain information they were not entitled to possess. The risk of misuse was a foreseeable consequence of failing to reasonably protect the records at issue.

74. A damages award alone will not correct deficient protection of records Defendant still retains or supply ongoing safeguards against further unauthorized access. Effective relief must address both the completed compromise and Defendant's continuing obligations.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this action individually and on behalf of the following proposed Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

> All current or former employees of Educational Testing Service residing in the United States whose Private Information was accessed or acquired by an unauthorized person in the data security incident publicly reported on or about September 25, 2026.

76. Excluded from the Class are Defendant; its officers and directors; the judicial officers assigned to this action and their immediate families; and any person who timely and validly requests exclusion from a Class certified with opt-out rights.

77. Class membership is ascertainable through objective evidence, including Defendant's personnel records, the records affected by the Data Breach, forensic findings, and any resulting notification records. Receipt of an individual notification is not a condition of membership.

78. The Class is sufficiently numerous that joining every member is impracticable. On information and belief, the Class includes hundreds or more current and former employees whose records were maintained within the affected environment. Defendant's records will establish the precise number and identities of Class Members.

79. Plaintiff's claims present common questions concerning Defendant's collection and retention of employee information, the safeguards applied to the affected records, the Data Breach, and Defendant's obligations to persons whose information was compromised.

80. Common questions include whether Defendant owed a duty of reasonable care; whether its security practices satisfied that duty; which deficiencies enabled the unauthorized access and acquisition; and whether those failures caused the loss of confidentiality and other injuries alleged here.

81. Additional common questions include whether the parties' employment-related dealings created an implied agreement to reasonably safeguard Private Information; whether Defendant breached that agreement; and whether Defendant retained benefits inequitably by accepting and using the information without providing reasonable protection.

82. The need for and appropriate scope of measures to protect retained records, notify affected individuals, and provide monitoring and identity-restoration services also present common questions capable of classwide resolution.

83. Plaintiff's claims are typical because she was an ETS employee who entrusted Private Information to Defendant, whose information was compromised in the same Data Breach, and whose claims arise from the same course of conduct and asserted duties as the claims of other Class Members.

84. Plaintiff will fairly and adequately represent the Class. Her interest in obtaining redress and reasonable protection aligns with the interests of other affected employees. She has retained counsel experienced in class-action and data-breach litigation and will vigorously pursue the claims.

85. Common issues predominate under Federal Rule of Civil Procedure 23(b)(3). Evidence concerning Defendant's systems, policies, security controls, retention practices, and response to the incident will resolve central liability questions for the Class as a whole.

86. Individual differences in the particular records affected or the amount of recoverable damages can be addressed through appropriate procedures without repeatedly litigating the common conduct that gave rise to the claims.

87. A class action is superior because individual claims may not justify the expense of separate litigation concerning a complex cybersecurity incident. Collective proceedings allow

affected employees to obtain meaningful relief while avoiding duplicative discovery and repeated adjudication of common issues.

88. Concentrating the claims in this forum is appropriate because Defendant is headquartered in Mercer County and, on information and belief, the challenged organization-wide practices were directed from here. The Court may coordinate this action with any related proceedings and use subclasses or other management measures as warranted.

89. Certification under Federal Rule of Civil Procedure 23(b)(2) is also appropriate for the requested injunctive and corresponding declaratory relief because Defendant's challenged practices apply generally to the Class and the requested improvements to retained-record security can benefit Class Members together.

90. If discovery identifies material differences requiring separate treatment, Plaintiff requests appropriate subclasses, issue certification, or modification of the definition consistent with Federal Rule of Civil Procedure 23(c)(1)(C), (c)(4), and (c)(5). Plaintiff seeks no duplicative recovery.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

91. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein.

92. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, maintaining, using, and protecting the sensitive employment information it requested and accepted from them.

93. That duty arose from Defendant's direct relationship with its employees, its affirmative collection and retention of their information, its control over the systems containing that information, and the foreseeable risk of harm if unauthorized persons obtained it.

94. Plaintiff and Class Members were an identifiable group to whom the risk was particularly foreseeable: the individuals whose confidential employment records Defendant held. Reasonable safeguards were within Defendant's control and could have prevented or materially limited the compromise.

95. Defendant's common-law duty to exercise reasonable care existed independently of any contractual obligation. Taking custody of sensitive identifiers and financial information created a foreseeable risk of harm requiring reasonable precautions against unauthorized access and misuse.

96. Reasonable care required Defendant to assess threats to the retained records; limit access to authorized persons with a legitimate need; maintain appropriate authentication and other protective controls; detect and contain unauthorized activity; and reasonably secure information for as long as it retained it.

97. On information and belief, Defendant breached these duties through the deficient access controls, monitoring, vulnerability management, and protection of retained records alleged above. Defendant failed to apply reasonable measures commensurate with the sensitivity of the information and the foreseeable consequences of its exposure.

98. The published FTC guidance and industry security resources described above further demonstrate the availability of reasonable precautions and the foreseeable consequences of failing to protect sensitive employee records.

99. Defendant's breaches were actual and proximate causes of the unauthorized access to and acquisition of Plaintiff's and Class Members' Private Information. Had Defendant exercised reasonable care, the compromise and resulting injuries would have been prevented or materially limited.

100. The criminal conduct of unauthorized actors was among the risks that Defendant's duty of care required it to address. On information and belief, Defendant's deficient safeguards enabled that foreseeable conduct to succeed.

101. As a direct and proximate result, Plaintiff and Class Members suffered the loss of confidentiality and control of their Private Information and the other injuries described above. Plaintiff additionally experienced unwanted telephone calls and emails following the Data Breach, and affected individuals face a continuing need for reasonable protection against misuse.

102. Plaintiff and Class Members seek compensatory damages in an amount to be determined at trial, including the reasonable cost of protective measures necessitated by the Data Breach to the extent recoverable, together with appropriate equitable relief.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein.

104. Plaintiff and Class Members had direct employment relationships with Defendant. In connection with those relationships, Defendant requested their Private Information, accepted it for legitimate employment purposes, and undertook to maintain the information in its custody.

105. The parties' conduct created implied agreements that Defendant would use reasonable measures to safeguard the Private Information supplied in connection with employment and would protect it from unauthorized access and disclosure for as long as it retained the information.

106. This undertaking was part of the parties' exchange. Plaintiff and Class Members supplied the identifying and financial information Defendant requested and performed work for Defendant; Defendant received the resulting operational benefits and undertook to reasonably protect the records created through that relationship.

107. Defendant's published policy, including its description of safeguards against unauthorized access and its treatment of employee information, further supports the reasonable understanding that sensitive information accepted for employment purposes would be maintained with reasonable security.

108. Plaintiff and Class Members accepted Defendant's undertaking through their conduct in providing the requested information and performing their employment obligations. The information was entrusted for limited purposes, with reasonable protection forming part of the parties' arrangement.

109. Plaintiff and Class Members performed their obligations by providing the requested information and performing their work. Defendant's continued retention of their records carried forward the obligation to safeguard the information after an employment relationship ended.

110. Defendant materially breached the implied agreements by failing to maintain reasonable protection for the entrusted information and allowing unauthorized persons to access and acquire the records through the deficiencies described above.

111. Those breaches directly caused the compromise of Plaintiff's and Class Members' Private Information and deprived them of the reasonable-security component of the parties' bargain. Adequate performance would have prevented or materially limited the exposure.

112. The parties reasonably contemplated that failure to protect sensitive employment records could lead to loss of confidentiality, misuse of identifiers and contact information, and the need for protective measures. These consequences were foreseeable when the information was supplied and throughout its retention.

113. Plaintiff and Class Members seek the damages caused by Defendant's breach, including recoverable losses associated with the failure to provide the promised protection and

reasonable protective measures necessitated by the compromise, in an amount to be proved at trial. Plaintiff also seeks nominal damages where available and appropriate equitable relief.

**THIRD CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

114. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein.

115. Plaintiff and Class Members had a legitimate and reasonable expectation of privacy in their identifying, financial, and other sensitive Private Information. They supplied that information for limited purposes and did not consent to its acquisition or use by unauthorized persons.

116. The information concerned private affairs that were not matters of legitimate public concern. Disclosure to an employer for employment administration did not authorize access by cybercriminals or surrender the right to keep those affairs confidential.

117. Defendant accepted custody of the Private Information and controlled the systems, access permissions, and practices through which that information was maintained. Defendant owed Plaintiff and Class Members an obligation to preserve its confidentiality and protect it against unauthorized disclosure.

118. On information and belief, Defendant knowingly maintained the sensitive records under the deficient security conditions described above despite its knowledge of the records' confidential nature and the foreseeable consequences of unauthorized access. Its decisions concerning retention, access, and security permitted the intrusion into Plaintiff's and Class Members' private affairs.

119. The unauthorized acquisition of sensitive identifying and financial records by cybercriminals constitutes an intrusion into private affairs that would be highly offensive to a

reasonable person. The records were entrusted to Defendant in confidence, and their acquisition for criminal use exceeded any purpose for which Plaintiff and Class Members supplied them.

120. On information and belief, Defendant's knowing disregard of the confidentiality and security of those records enabled the invasion alleged here. The circumstances concerning Defendant's knowledge, security decisions, and the means by which the records became accessible are within Defendant's possession and control.

121. As a direct and proximate result, Plaintiff and Class Members suffered the loss of confidentiality and control of their Private Information and the related injuries described above. The acquisition placed sensitive information beyond their control and made it available for further unauthorized use and disclosure.

122. Plaintiff and Class Members seek compensatory damages and appropriate equitable relief, including protection of the Private Information Defendant continues to retain and measures addressing the continuing consequences of the invasion.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class, in the Alternative)**

123. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein. This claim is pleaded in the alternative to the contract claim and applies to the extent no enforceable contract governs the challenged retention of benefits.

124. Plaintiff and Class Members directly conferred benefits on Defendant by supplying the Private Information it requested in connection with employment and by performing work that enabled Defendant's assessment operations.

125. The information had a concrete operational use to Defendant: it enabled workforce administration, compensation processing, identification of employees, and maintenance of the

personnel records necessary for Defendant's operations. Defendant knowingly accepted and used those benefits.

126. Plaintiff and Class Members did not confer these benefits gratuitously. They expected compensation for their work and reasonable protection of the sensitive information required for that relationship, including protection for as long as Defendant retained their records.

127. Defendant accepted the benefits of their work and information while, on information and belief, avoiding expenditures reasonably necessary to protect the sensitive records it retained. It thereby retained a benefit at the expense of the individuals exposed by its deficient safeguards.

128. Defendant's retention of that benefit is inequitable because it obtained the use of information supplied for limited employment purposes without providing the reasonable protection contemplated by that exchange, leaving Plaintiff and Class Members to bear the resulting loss of confidentiality and protective burden.

129. To the extent an adequate contractual remedy is unavailable, equity requires restoration of the benefit unjustly retained. Plaintiff and Class Members seek restitution measured by Defendant's unjust enrichment attributable to the conduct alleged, as established through discovery and proof.

130. Plaintiff requests an accounting as necessary to determine that amount and appropriate restitution or disgorgement, without duplicating any recovery under the other claims.

## FIFTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

131. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein.

132. Plaintiff and Class Members entrusted highly sensitive identifying and financial information to Defendant in a relationship of confidence for limited employment purposes.

Defendant accepted responsibility for the custody and protection of that information and exercised control over its storage, permitted uses, access, and retention.

133. By undertaking that responsibility, Defendant became a fiduciary with respect to the safeguarding and confidentiality of Plaintiff's and Class Members' Private Information. The fiduciary obligations asserted here concern that entrusted information and Defendant's administration of it.

134. Plaintiff and Class Members depended on Defendant to protect records they were required to provide and could not secure themselves. Defendant possessed superior knowledge of its security practices and the risks to those records, and it accepted and continued the relationship of trust by retaining the information.

135. Defendant was obligated to act for the benefit of Plaintiff and Class Members within the scope of that undertaking, preserve the confidentiality of the records, exercise appropriate care in their protection, and accurately account for their custody and authorized use.

136. On information and belief, Defendant breached those duties by maintaining sensitive records without adequate safeguards, failing to reasonably limit and monitor access, and allowing unauthorized persons to acquire the information through the deficiencies alleged above.

137. The duty to protect the entrusted information continued after an employment relationship ended for as long as Defendant retained the records. The decision to retain former employees' information carried a corresponding obligation to protect it.

138. As a direct and proximate result of Defendant's breaches, Plaintiff and Class Members suffered the loss of confidentiality and control of their Private Information and the other injuries alleged above. They seek compensatory damages and appropriate equitable relief for those injuries.

## SIXTH CAUSE OF ACTION
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

139. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein.

140. Plaintiff and Class Members disclosed their sensitive Private Information to Defendant in confidence, with the understanding that it would be maintained for limited employment purposes and protected against unauthorized access and disclosure.

141. Defendant knew the confidential nature of the information, requested and accepted it on that basis, and assumed an obligation of confidence by obtaining and continuing to maintain the records. Its published privacy and security representations further acknowledged that undertaking.

142. Plaintiff's separation from employment did not terminate Defendant's obligation of confidence as to information it continued to hold. Nor did it authorize Defendant to expose her confidential records to third parties.

143. On information and belief, Defendant breached its obligation of confidence by failing to reasonably secure the records, maintain adequate access controls, and prevent unauthorized persons from obtaining information entrusted to it for restricted purposes.

144. Plaintiff and Class Members did not consent to the unauthorized disclosure and could not prevent it from outside Defendant's systems. Defendant's acts and omissions caused the information to pass beyond the confidential relationship in which it had been supplied.

145. As a direct and proximate result, Plaintiff and Class Members suffered the loss of confidentiality and control of their Private Information and the related injuries described above. They seek compensatory damages and appropriate equitable relief.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

146. Plaintiff incorporates paragraphs 1 through 90 as though fully set forth herein and seeks declaratory and corresponding injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

147. The claims above present an actual controversy concerning Defendant's obligations to reasonably protect Plaintiff's and Class Members' Private Information and remedy the consequences of its deficient safeguards.

148. On information and belief, Defendant continues to possess Plaintiff's and Class Members' information in personnel records, systems, or backups. Its continuing possession gives affected individuals an ongoing interest in the reasonable security of those records.

149. On information and belief, the deficiencies that permitted the Data Breach have not been fully remedied throughout the environment holding employee information. Without adequate and sustained safeguards, the retained records remain exposed to further unauthorized access.

150. Under 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaration of Defendant's continuing obligation to use reasonable measures to protect the Private Information it retains and of its breach of that obligation through the practices alleged in this Complaint.

151. Plaintiff also seeks an injunction requiring Defendant to implement and maintain a reasonable information-security program tailored to its retained employee records, including appropriate access restrictions, authentication, monitoring, vulnerability management, employee training, and incident-response procedures.

152. The requested relief includes appropriate independent assessment of the safeguards protecting affected records and correction of material deficiencies identified by that assessment, with reasonable reporting of compliance to the Court.

153. Defendant should also be required to identify affected individuals and the categories of their information involved, provide complete and accurate notice, and make appropriate credit-monitoring and identity-restoration services available for a period commensurate with the continuing risk.

154. Plaintiff further seeks reasonable limits on the retention of sensitive employee information and secure disposal when continued retention is unnecessary, subject to lawful retention requirements and preservation obligations in this litigation.

155. Legal remedies alone are inadequate to prevent further unauthorized access to information Defendant continues to hold. The requested relief addresses the practices that caused the compromise and is necessary to reduce the risk of recurring harm.

156. The balance of hardships favors requiring Defendant to reasonably protect information in its custody. Plaintiff and Class Members cannot secure Defendant's systems themselves, while Defendant controls the safeguards and retention decisions at issue. Effective protection also serves the public interest in the security of sensitive employment records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in her favor and against Defendant and grant the following relief:

A. Certify this action as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiff as Class Representative, and appoint her counsel as Class Counsel under Rule 23(g);

B. Direct appropriate notice to the Class at Defendant's expense;

C. Award compensatory and other recoverable damages in an amount to be determined at trial, including the reasonable cost of protective measures caused by the Data Breach to the extent recoverable;

D. Award nominal damages on the contract claim where available;

E. Award restitution or disgorgement of benefits unjustly retained by Defendant, with an accounting as necessary and without duplicative recovery;

F. Declare Defendant's obligations and breaches concerning the protection of retained Private Information as alleged herein;

G. Enter injunctive relief requiring reasonable security measures, appropriate independent assessment and remediation, and proper limits on retention and secure disposal, subject to preservation and other legal duties;

H. Require complete and accurate notice to affected individuals and appropriate credit-monitoring and identity-restoration services for a duration commensurate with the continuing risk;

I. Award reasonable attorneys' fees and expenses from any common fund created through this action, or on another basis recognized by applicable law;

J. Award recoverable costs and prejudgment and postjudgment interest as permitted by law; and

K. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues so triable.

Dated: October 5, 2026

Respectfully submitted,

By: */s/ Leanna A. Loginov*
Leanna A. Loginov (NJ Bar no. 389742022)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com

*Pro hac vice forthcoming

Attorneys for Plaintiff and the Proposed Class